UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO.: _____

ROLLY MARINE SERVICE COMPANY, INC.,

    Plaintiff,

vs.

M/Y BABIECA, her engines, tackle, etc.
Official No. 40191, *in rem*, NIGHTFALL
MARINE LTD., a foreign corporation, as
owner of the M/Y BABIECA, *in personam*
and GENERALI YACHT ASSURANCES,
a foreign corporation, as insurer of the
M/Y BABIECA,

    Defendants.            /

**VERIFIED COMPLAINT FOR MARITIME SALVAGE AWARD AND TO
FORECLOSE MARITIME LIENS FOR NECESSARIES**

COMES NOW the Plaintiff, ROLLY MARINE SERVICE COMPANY, INC. ("Rolly Marine"), by and through its undersigned counsel, and files this action against Defendants, M/Y BABIECA, *in rem*, NIGHTFALL MARINE LTD, *in personam*, and GENERALI YACHT ASSURANCES, *in personam*, to foreclose maritime liens for necessaries and seeking an award for salvage services provided to the M/Y BABIECA, a 2005 105' #11 Azimut, Official No. 40191, and in support of such foreclosure and award states as follows:

**Jurisdiction and Venue**

1. This is an action to foreclose maritime liens for necessaries and for a maritime salvage award against the *in rem* Defendant Vessel, BABIECA, a 2005 105' #11 Azimut, Official No. 40191, her owner, NIGHTFALL MARINE LTD., *in personam*, and insurer,

GENERALI YACHT ASSURANCES, *in personam* arising under this Court's admiralty and maritime jurisdiction as more fully appears, pursuant to and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, the Supplemental Rules for Certain Admiralty and Maritime Proceedings and the General Maritime Law of the United States.

2. At all times material, Plaintiff, ROLLY MARINE, was and is a corporation organized and existing under the laws of the State of Florida, with its principal office at Fort Lauderdale, Broward County, Florida.

3. At all times material, Plaintiff, ROLLY MARINE, operated and still operates a marine repair facility in Fort Lauderdale, Broward County, Florida.

4. At all times material, Defendant, M/Y BABIECA, *in rem*, was located at ROLLY MARINE'S facility, 2551 State Road 84, Fort Lauderdale Florida, within this District and will remain in this District at that location during the pendency of her arrest.

5. At all times material and upon information and belief, M/Y BABIECA was purchased in late 2009 by a non-U.S. citizen, Defendant, NIGHTFALL MARINE LTD., who was and is a corporation organized and existing under the laws of the British Virgin Islands.

6. At all times material and upon information and belief, Defendant, GENERALI YACHT ASSURANCES, issued a Marine Insurance Policy, Cover Note 69.228.640, which insured the *in rem* Defendant vessel, BABIECA, and *in personam* Defendant, NIGHTFALL MARINE LTD., for casualties such as the maritime peril faced by M/Y BABIECA when the vessel sank and became disabled as set forth in detail herein.

7. Defendant, GENERALI YACHT ASSURANCES are subject to suit herein as the salvage assistance rendered by ROLLY MARINE inured to its direct benefit and mitigated substantial loss to insured property with an agreed hull value of Six Million Three-Hundred

Thousand Euros (€6,300,000), *to wit*, the vessel BABIECA, Official No. 40191. *See Cresci v. M/Y Billfisher*, 874 F.2d 1550 (11th Cir. 1989).

8. Defendant, GENERALI YAHCT ASSURANCE, is subject to suit herein by reason of its substantial contacts within this District and by virtue of the direct and immediate benefit it received as the hull insurer from the salvage services rendered by ROLLY MARINE in this district.

### General Allegations

9. Plaintiff, ROLLY MARINE, reasserts and re-alleges each and every allegations set forth in paragraph one (1) through eight (8) above as if more fully set forth at length herein.

10. On or about October 10, 2010, Defendant, NIGHTFALL MARINE LTD. caused M/Y BABIECA to arrive at Plaintiff, ROLLY MARINE'S, repair facility in Fort Lauderdale, Florida, for the purpose of undergoing intended repairs.

11. M/Y BABIECA was berthed at an uncovered slip at ROLLY MARINE'S repair facility in Fort Lauderdale, Florida, up and through October 15, 2010 and remained, at all times, within the custody and control of NIGHTFALL MARINE LTD and/or M/Y BABIECA, her Captain and Crew.

12. M/Y BABIECA, while berthed at ROLLY MARINE, incurred dockage charges which remain unpaid.

13. M/Y BABIECA, a 105' Azimut, was formerly RINA classed[1] and, shortly before October 15, 2010, NIGHTFALL MARINE LTD. contracted with Plaintiff, ROLLY MARINE, to

---

[1] A classification society, such as RINA, is a non-governmental organization that establishes and maintains technical standards for the construction and operation of ships and offshore structures. The society will also validate that construction is according to these standards and carry out regular surveys in service to ensure compliance with the standards.

effectuate repairs to her in order to, once again, bring her into RINA class. On information and belief, there were also numerous other equipment discrepancies and material deficiencies in the condition of BABIECA which rendered her unseaworthy.

14. The RINA classification society indicated the following surveys needed to be carried out in order to place the vessel back in Class:

    a. Hull Renewal;

    b. Hull Intermediate;

    c. Bottom in Dry Condition at Renewal;

    d. Machinery Renewal;

    e. Machinery Intermediate; and

    f. Tailshaft, Port and Starboard complete surveys, including shaft withdrawal.

15. At all times material hereto, it was the responsibility of NIGHTFALL MARINE LTD., the agent of BABIECA, and/or her master to present BABIECA at the haul out slip for haul out and repair.

16. ROLLY MARINE promptly relayed this information to NIGHTFALL MARINE LTD. NIGHTFALL MARINE LTD then advised ROLLY MARINE that BABIECA was to be hauled and blocked in order to effectuate the surveys required by the RINA classification society.

17. On October 15, 2010 ROLLY MARINE notified the Captain of M/Y BABIECA, Andrew Silva, that BABIECA was scheduled to be hauled and blocked that day.

18. ROLLY MARINE further advised said captain to be prepared to move BABIECA to the haul out slip for haul out. At the time of this notification, Captain Silva was located on the premises of ROLLY MARINE in Fort Lauderdale Florida.

19. At all times material hereto, it was the responsibility of NIGHTFALL MARINE LTD. and the captain of BABIECA to make all necessary preparations for the vessel to be moved and hauled and to ensure that she was seaworthy and reasonably fit to be moved and hauled.

20. Upon information and belief, shortly before M/Y BABIECA was moved in order to haul and block her, Andrew Silva, Captain of M/Y BABIECA, left the premises of ROLLY MARINE.

21. Immediately prior to Captain Silva's departure, upon being reminded of the pending haul out, the Captain instructed ROLLY MARINE to "move it themselves" and to "take care of it" and haul out the vessel.

22. No other Captain or crew were aboard M/Y BABIECA and, at said time, the captain and crew abandoned their responsibility to move the vessel to the haul out slip and instructed ROLLY MARINE to make said arrangements on their behalf.

23. With no Captain and no crew to start M/Y BABIECA'S engines or otherwise assist in maneuvering, and having been instructed by the Captain to make arrangements to move the vessel on behalf of the owner, ROLLY MARINE acting as agent for and on behalf of NIGHTFALL MARINE LTD., engaged the services of Cape Ann Towing in order to tow the vessel stern first into ROLLY MARINE'S haul out slip.

24. Cape Ann Towing provided two workboats to carry out the maneuver, one made fast to the stern of M/Y BABIECA, the other to her bow.

Case 0:11-cv-61002-AJ   Document 1   Entered on FLSD Docket 05/05/2011   Page 6 of 16

25. At that time, M/Y BABIECA was situated with her bow towards ROLLY MARINE'S haul out slip, but in order to properly haul her, she had to be turned around and hauled stern first.

26. Therefore, M/Y BABIECA was gently pulled by Cape Ann Towing's tugs from her berth toward the south fork of the New River in Fort Lauderdale, Florida, a navigable waterway, approximately seventeen (17) feet deep, in order to turn her one-hundred eighty (180) degrees.

27. Immediately upon initiating the tow, the captain aboard Cape Ann Towing's workboat secured to M/Y BABIECA'S stern noticed the vessel felt sluggish and was slightly listing to one side. He immediately became concerned about the condition of BABIECA.

28. Seconds later, the Cape Ann Towing captain noticed M/Y BABIECA was beginning to settle down in the water by the stern, was taking on water, and appeared to be sinking.

29. If left where she was sinking, she would have been a hazard to navigation, likely leaked fuel, causing a major oil spill and environmental problems.

30. In order to relieve her from her peril at that point barges and cranes would have to have been activated to re-float her.

31. By that time, additional damages would have been caused, including, but not limited to, electrolyzing all terminals in the vessel, saturating all electrical wiring with water, all interior goods would have been saturated with water, including fabrics and joinery, all bridge controls and electronics destroyed, and the vessel could have rolled over on her side.

6

HOUCK ANDERSON, ATTORNEYS AT LAW

32. Thus, Cape Ann Towing, with great skill and diligence, immediately began moving the vessel towards the haul out slip, bow first, approximately 150 yards award, in order to avoid the damages outlined above.

33. M/Y BABIECA continued to take on water and, by the time she reached the haul out slip, her garage area and engine room were submerged.

34. The vessel's rudders then came into contact with the sea bed and she settled and sat, static, in a submerged condition.  The vessel was in great peril of sinking further, taking on more water, suffering damage to her props, shafts, and hull and becoming a constructive total loss.

35. ROLLY MARINE was then notified of the condition of M/Y BABIECA and immediately engaged their emergency response procedures.

36. With great skill and diligence, ROLLY MARINE, voluntarily and under no pre-existing duty or other legal obligation, placed pumps aboard, began pumping out water, mobilized divers, gear, and other equipment in order to relieve M/Y BABIECA from her condition of peril and minimize further damage to her engines, hull and other equipment.

37. Several persons from ROLLY MARINE entered the water and went aboard the vessel to assess the cause of the sinking and to determine how best to refloat the yacht and haul it out to dry land.

38. ROLLY MARINE utilized a large blue tarpaulin wrapped around the transom of the vessel in order to allow the auxiliary pumps provided by ROLLY MARINE to gain against the flooding and dewater the vessel.

39. As a result of ROLLY MARINE'S efforts, M/Y BABIECA was successfully refloated onto her normal waterline.

40. CAPE ANN TOWING then towed her back out into the south fork of the New River in order to, finally, turn her around and haul her out stern first.

41. During this tow, the vessel was observed to be floating at least four (4) inches higher than previously.

42. The maneuver was safely completed without incident.

43. ROLLY MARINE lifted her out of the water and blocked her ashore.

44. ROLLY MARINE then proceeded immediately to undertake mitigation work to clean the vessel, prepare the engines for restarting, preserve whatever equipment could be preserved, and remove materials from the boat that would have caused additional damage had they remained in place.

45. ROLLY MARINE removed the tenders to the vessel, serviced and "pickled"[2] three engines to minimize further degradation of the machinery.

46. ROLLY MARINE had the garage area and engine room washed down and steam cleaned in order to prevent or minimize saltwater damage to the machinery.

47. ROLLY MARINE, with great skill and diligence, activated specialized marine mechanics to remove all electronics, starters, alternators, engine controls, modules, and fuel injectors for re-building.

48. When the starters were received back by ROLLY MARINE they installed the starters and ran the engines on land using city water for cooling.

49. This procedure was performed three times. After each occasion, the oil was changed.

50. No water was ever found in any of the fuel tanks.

---

[2] Pickling an engine is the process by which mechanics and marine personnel use to save an engine which has been exposed to seawater.

51. She was then re-launched and remains at ROLLY MARINE, afloat and under covered storage.

52. ROLLY MARINE purchased new batteries which continue to operate the vessel's emergency bilge pump system.

53. In addition, ROLLY MARINE installed a battery charger to maintain the batteries in full charge and the vessel is monitored three times a day to ensure its water tightness.

54. Had it not been for the significant efforts of ROLLY MARINE, she would have been a certain total loss.

## Count I
### Voluntary Pure Salvage

55. Plaintiff, ROLLY MARINE, reasserts and re-alleges each and every allegations set forth in paragraph one (1) through fifty-four (54) above as if more fully set forth at length herein.

56. The voluntary actions of ROLLY MARINE on October 15, 2010 successfully rescued M/Y BABIECA from a condition of maritime peril, preserving the vessel for future use and enjoyment and avoiding certain and foreseeable loss.

57. ROLLY MARINE'S immediate response to this situation with necessary personnel and equipment to rescue M/Y BABIECA from her condition serves as the basis for this pure salvage claim.

58. If Plaintiff had not salvaged Defendant vessel, BABIECA, Defendant vessel would have suffered total or substantial destruction.

59. At the time of the incident, the Defendant vessel, BABIECA was insured under an agreed value hull policy for Six Million Three Hundred Thousand Euros (€6,300,000) or approximately Nine Million U.S. Dollars ($9,000,000).

60. The successful rescue of Defendant vessel and prevention of extensive further damage was accomplished solely through the efforts of ROLLY MARINE and Cape Ann Towing and without assistance from any other craft, personnel or equipment.

61. After reaching BABIECA while she was in peril and in danger of incurring additional damage, ROLLY MARINE successfully removed the vessel from her grounded and partially submerged condition, de-watered the vessel, hauled and blocked her ashore, and took significant steps to mitigate damages already incurred.

62. ROLLY MARINE successfully salvaged M/Y BABIECA and, by reason of such services performed, the time spent, and danger incurred salving the Defendant Vessel, and all other relevant factors, is entitled to a liberal salvage award for such services to be determined by this Court in accordance with General Maritime Law.

WHEREFORE, Plaintiff, ROLLY MARINE, respectfully requests this Honorable Court to adjudge the following:

    a.    That process issue against M/Y BABIECA, her engines, apparel and other appurtenances, *in rem*;

    b.    That all persons having or claiming interest therein may be cited to appear and answer the matters aforesaid;

    c.    That Plaintiff be decreed to have a lien upon the Defendant vessel described herein and that such lien be foreclosed in accordance with law and thereupon that the vessel be condemned and sold in payment of the amount due and all such other sums as are owed;

    d.    That Plaintiff be permitted to bid its judgment against the vessel at a U.S. Marshal's Sale; and

e. Upon proper notice and hearing, judgment be entered for the total sum of Two Million Dollars ($2,000,000) jointly and severally against the Defendants, M/Y BABIECA, her engines, tackle, etc. Official No. 40191, *in rem*, NIGHTFALL MARINE LTD., a foreign corporation, as owner of the M/Y BABIECA, *in personam* and GENERALI YACHT ASSURANCES, a foreign corporation, as Insurer of the M/Y BABIECA together with pre-judgment interest, costs, and attorney's fees.

## Count II
### Maritime Lien for Necessaries –Salvage

63. In the alternative, ROLLY MARINE, makes an *in rem* action to enforce a maritime lien for necessaries as set forth in 46 U.S.C. §§ 31301(4) and (5), which statute provides for maritime liens for necessaries provided to any vessel on the order of her owner, who is statutorily deemed to have authority to bind the vessel.

64. On or about October 15, 2010, and as more fully alleged *infra*, Plaintiff, ROLLY MARINE, provided certain services and undertook certain expenses on behalf of M/Y BABIECA in order to save the vessel from certain total loss and minimize damages to the vessel as a result of the vessel sinking at its repair yard in Fort Lauderdale, Florida.

65. ROLLY MARINE, as a result of such services and necessaries provided to M/Y BABIECA incurred expenses in the amount of $103,210.09.

66. M/Y BABIECA and NIGHTFALL MARINE LTD. have failed to pay the amounts stated above for maritime necessaries provided to the vessel.

67. As a result, ROLLY MARINE has incurred damages in the amount of $103,210.09 of unpaid principal, together with prejudgment interest through May 2011 which continues to accrue for maritime necessaries to M/Y BABIECA.

WHEREFORE, Plaintiff, ROLLY MARINE, respectfully requests this Honorable Court to adjudge the following:

a. That process issue against M/Y BABIECA, her engines, apparel and other appurtenances, *in rem*;

b. That all persons having or claiming interest therein may be cited to appear and answer the matters aforesaid;

c. That Plaintiff be decreed to have a lien upon the Defendant vessel described herein and that such lien be foreclosed in accordance with law and thereupon that the vessel be condemned and sold in payment of the amount due and all such other sums as are owed;

d. That Plaintiff be permitted to bid its judgment against the vessel at a U.S. Marshal's Sale; and

e. Upon proper notice and hearing, judgment be entered for the total sum of $103,210.09 jointly and severally against the Defendants, M/Y BABIECA, her engines, tackle, etc. Official No. 40191, *in rem*, and NIGHTFALL MARINE LTD., a foreign corporation, as owner of the M/Y BABIECA, *in personam* together with pre-judgment interest, costs, and attorney's fees.

### Count III
### Maritime Lien for Necessaries – Dockage

68. In the alternative, ROLLY MARINE, makes an *in rem* action to enforce a maritime lien for necessaries as set forth in 46 U.S.C. §§ 31301(4) and (5), which statute provides for maritime liens for necessaries provided to any vessel on the order of her owner, who is statutorily deemed to have authority to bind the vessel.

69. On or about October 15, 2010, and as more fully alleged *infra*, Plaintiff, ROLLY MARINE, provided certain services and undertook certain expenses on behalf of M/Y BABIECA in order to store and dock the vessel at its repair yard in Fort Lauderdale, Florida.

70. ROLLY MARINE, as a result of such services and necessaries provided to M/Y BABIECA incurred expenses in the amount of $47,486.84.

71. M/Y BABIECA and NIGHTFALL MARINE LTD. have failed to pay the amounts stated above for maritime necessaries provided to the vessel.

72. As a result, ROLLY MARINE has incurred damages in the amount of $47,486.84 of unpaid principal, together with prejudgment interest through May 2011 which continues to accrue for maritime necessaries to M/Y BABIECA.

WHEREFORE, Plaintiff, ROLLY MARINE, respectfully requests this Honorable Court to adjudge the following:

f. That process issue against M/Y BABIECA, her engines, apparel and other appurtenances, *in rem*;

g. That all persons having or claiming interest therein may be cited to appear and answer the matters aforesaid;

h. That Plaintiff be decreed to have a lien upon the Defendant vessel described herein and that such lien be foreclosed in accordance with law and thereupon that the vessel be condemned and sold in payment of the amount due and all such other sums as are owed;

i. That Plaintiff be permitted to bid its judgment against the vessel at a U.S. Marshal's Sale; and

j.  Upon proper notice and hearing, judgment be entered for the total sum of $47,486.84 jointly and severally against the Defendants, M/Y BABIECA, her engines, tackle, etc. Official No. 40191, *in rem*, and NIGHTFALL MARINE LTD., a foreign corporation, as owner of the M/Y BABIECA, *in personam* together with pre-judgment interest, costs, and attorney's fees.

DATED this 5th day of May 2011.

Respectfully submitted,

  /s/ Charles S. Davant
ANDREW W. ANDERSON
aanderson@houckanderson.com
Florida Bar No.: 213144
CHARLES S. DAVANT
cdavant@houckanderson.com
Florida Bar No.: 15178
HOUCK ANDERSON P.A.
Attorneys for Plaintiff
200 South Biscayne Blvd., Suite 300
Miami, Florida 33131
Telephone:  (305) 372-9044
Facsimile:   (305) 372-5044

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of May, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                         */s/ Charles S. Davant*
                                                      CHARLES S. DAVANT, ESQ.

HOUCK ANDERSON, ATTORNEYS AT LAW

## VERIFICATION

STATE OF FLORIDA     )
                     ) ss:
COUNTY OF BROWARD    )

BEFORE ME personally appeared Greg Poulos, who after first being duly sworn deposes and states that the allegations contained in the above and foregoing Verified Complaint are true and correct to the best of his personal knowledge and belief.

_____
Greg Poulos
General Manager
Rolly Marine Service Company, Inc.

SWORN TO and SUBSCRIBED before me this ___5___ day of May, 2011.

_____
NOTARY PUBLIC
STATE OF ___Florida___
My Commission Expires: __Sept. 2, 2014__
Notary Seal:

> SHERYL A. LOPEZ
> Notary Public - State of Florida
> My Comm. Expires Sep 2, 2014
> Commission # EE 22856